HERMANS *v.* NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department. January 22, 1892.)*

1. RAILROAD COMPANIES—ACCIDENT AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
   In an action for the death of plaintiff's decedent in a collision of his carriage with defendant's railroad train at a crossing, it appeared that deceased, when about 200 feet from the crossing, was seen to be looking to the east, the direction from which the train approached; that his view was obstructed by several houses, the nearest of which stood 27 feet from the main track, and 14 feet from a side track. There was evidence, though conflicting, that a train of box-cars stood on the side track immediately east of the crossing, and uncontroverted evidence that it stood there an hour or an hour and a half after the accident. Evidence that, if the box-cars did stand on the side track, deceased could not have seen the approaching train, was uncontroverted. *Held*, that the evidence justified the finding that decedent was not negligent.

2. SAME—FAILURE TO GIVE SIGNALS.
   In such case, though defendant was not required by statute to sound a whistle or ring a bell when its train approached the highway, as such appliances were available, the failure to use them was negligence.

Appeal from circuit court, Wayne county.

Action by Sarah E. Hermans, administratrix, against the New York Central & Hudson River Railroad Company for the death of plaintiff's husband. Plaintiff had judgment for $3,500, from which and an order denying its motion for a new trial, made on the minutes, defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Camp & Dunwell*, for appellant. *Louis Marshall*, for respondent.

MACOMBER, J. The plaintiff's intestate was at the time of the accident riding along Geneva street, which runs nearly north and south through a portion of the village of Lyons, and was accompanied by a man by the name of Bradley. They were going south from the central part of the village, and had crossed the tracks of the New York Central & Hudson River Railroad,

which are about 471 feet from the tracks of the West Shore Railroad, and, while attempting to cross the tracks of the latter railroad, they were struck by a passenger-train, and the plaintiff's intestate received injuries from which he soon thereafter died. The men were riding in a covered carriage, which is described as a canopy-top "Democrat," drawn by one horse, which was driven by Bradley. This vehicle had a curtain in the rear, which was down and buttoned. The side curtain of the back section was also down, but whether the curtains on the forward sections on the sides were down or not was a disputed fact in the case. The men were sitting in the rear seat. Evidence was adduced in behalf of the plaintiff to the effect that, at a distance of about 200 feet from this crossing, the deceased was seen to be looking towards the east, the direction from which the train came, and that his companion was looking in the opposite direction. There were three houses (two of them owned by the defendant) to the north of the West Shore tracks, and on the east side and close to the highway, standing on lots which are each about 40 feet wide; and it is shown that these houses, in certain places in the highway, were obstructions to the clearness of the view of the railway tracks to the east. The south side of the house nearest the tracks is shown to be 27 feet from the north rail of the main track, and 14 feet from the north rail of a branch track which extended from a switch which was located 638 feet to the east of the crossing to a freight-house, which was 529 feet west of the crossing. After passing the south line of this house there was an unobstructed view of one mile to the east. The passenger station of the West Shore Railroad at Lyons is 275 feet west of the crossing. The weather was rainy and freezing. The highway was up grade to the south at this point 6 feet in 50, caused by changes made by the railroad company in building its railroad. The horse was traveling at about 4 miles per hour. The speed of the train when it came in collision with the carriage is variously estimated by the witnesses from 15 to 25 miles an hour. It was neither a flag nor a barricade crossing.

A perusal of the testimony satisfies us that it was the duty of the justice at the circuit to submit the two questions, viz., the defendant's negligence, and the plaintiff's freedom of negligence, to the jury for their decision. Upon the subject of the defendant's negligence, the case presents the usual contradictions among the witnesses. But there was sufficient evidence of a direct kind produced to enable the jury to say that the defendant's employes did not avail themselves of the means of signaling their approach to the highway crossing which they had in their power to do, such as ringing the bell or sounding the whistle of the locomotive. While it is true that the statute making it incumbent upon railroad corporations to sound the whistle or ring the bell at a distance of 80 rods upon approaching a highway has been repealed, yet, so long as the company has at hand or there are available to it these appliances for giving notice of approaching danger, it is its duty to use them. This part of the case, therefore, was decided by the jury upon sufficient and competent evidence. In regard to the other question, namely, the freedom of the decedent from any acts which contributed to the production of the injury, the case, except for one very strong circumstance, would remain in great doubt. With a space of 27 feet where an unobstructed view could be had, it was the duty of the deceased to use his eyes; and, so doing, he could not fail to observe the approach of the train, so far as any obstructions appeared outside of those on the railway itself. *Nash* v. *Railroad Co.*, 125 N. Y. 715, 26 N. E. Rep. 266. At this point the evidence is so contradictory that it would seem as if the witnesses on the one side or the other had either lost or perverted their memories. Several persons testified that on the side track above mentioned, immediately to the east of this crossing, stood a train of box-cars, the rear end of the west car being about opposite the south-west corner of the house nearest the tracks, and that this consti-

tuted a complete obstruction of the view to the east, so that an approaching train could not be seen, except that, as some of the witnesses stated, the smoke coming from the smoke-stacks and the tops of the smoke-stacks might be seen. But there is a general concurrence in the testimony in the case that, if these cars were actually upon the tracks at the time of this collision, the failure of the deceased to see the approaching train after he had passed the house nearest to the north track is not only explained, but excused. The evidence given on this subject by the employes of the company, and particularly that of the engineer, is that 12 minutes before the collision he had removed this train of box-cars by taking it from the side track across the highway down to the freight-house. Yet there is testimony given by apparently credible men, who examined the *locus in quo* an hour or an hour and a half afterwards, and who say that they found actually standing there such train of box-cars so positively stated to have been there when the deceased attempted to cross the tracks. The presence of these cars at that point after the collision is not only not explained by the evidence given in behalf of the defendant, but no effort was made to show that they had been drawn back to this place afterwards. There being only eight feet space between the side track and the main track, it is evident that, even up to the instant that the horse reached the main track, the box-cars obstructed the view, and concealed from the occupants of the carriage the approach of the train. Under these circumstances, we think the evidence exonerates the deceased from any fault which contributed to his death. For these reasons the jury was justified in finding the two principal questions against the defendant. It follows, therefore, that the order denying the motion for a new trial should be affirmed. Order appealed from affirmed, with costs. All concur.